UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
I.A.M. NATIONAL PENSION FUND,           )
NATIONAL PENSION PLAN, *et al.*          )     Case No. 1:06-cv-01271
                                         )
       Plaintiffs,                      )
                                         )
  v.                                     )
                                         )
OWENS-ILLINOIS, INC.                     )
                                         )
       Defendant.                       )
_____)

## ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM

      Defendant Owens-Illinois, Inc. ("Owens-Illinois" or "Defendant"), by its undersigned counsel, pursuant to Fed. R. Civ. Proc. 12, files this Answer and Counterclaim to the Complaint filed by I.A.M. National Pension Fund, National Pension Plan ("Plaintiffs" or "the Plan"), and in support thereof states as follows:

      1.     This is an action for legal and equitable relief brought pursuant to 29 U.S.C. § 1132(a)(3) by the I.A.M. National Pension Fund, National Pension Plan (hereafter "the Plan") and its Co-Chairman to secure the performance of statutory and contractual obligations owed to the Plan by the Defendant.

      <u>Response</u>:    The allegations contained in paragraph 1 of the Complaint constitute legal conclusions to which Defendant is not required to respond. To the extent a response is required, Defendant denies the allegations contained in paragraph 1 of the Complaint.

      2.     This Court has jurisdiction of this action under the provisions of 29 U.S.C. § 1132(e)(1).

<u>Response</u>:	The allegations contained in paragraph 2 of the Complaint constitute legal conclusions to which Defendant is not required to respond.  To the extent a response is required, Defendant admits the allegations contained in paragraph 2 of the Complaint.

3.	Venue is proper in this Court pursuant to 29 U.S.C. § 1132(e)(2).

<u>Response</u>:	The allegations contained in paragraph 3 of the Complaint constitute legal conclusions to which Defendant is not required to respond.  To the extent a response is required, Defendant admits the allegations contained in paragraph 3 of the Complaint.

4.	The Plan is a collectively bargained labor-management pension trust fund created by Agreement and Declaration of Trust originally entered into on May 1, 1960, pursuant to the provisions of 29 U.S.C. § 186(c)(5).  The Plan maintains its principal place of business at 1300 Connecticut Avenue, NW, Suite 300, in the City of Washington, D.C.

<u>Response</u>:	To the extent allegations contained in paragraph 4 of the Complaint constitute legal conclusions, Defendant is not required to respond.  The extent a response is required, Defendant is without sufficient personal knowledge to admit or deny Plaintiffs' allegations contained in paragraph 4 of the Complaint.

5.	The Plan is an "employee pension benefit plan" within the meaning of 29 U.S.C. §1002(2) and a "multi-employer plan" within the meaning of 29 U.S.C. §1132(d)(1).

<u>Response</u>:	The allegations contained in paragraph 5 of the Complaint constitute legal conclusions to which Defendant is not required to respond.  The extent a response is required, Defendant is without sufficient personal knowledge to admit or deny Plaintiffs' allegations contained in paragraph 5 of the Complaint.

6.     Warren Mart and Burton C. Trebour are the Co-Chairmen of the I.A.M. National Pension Fund Board of Trustees and are fiduciaries within the meaning of 29 U.S.C. § 1132(a)(3).

Response:     The allegations contained in paragraph 6 of the Complaint constitute legal conclusions to which Defendant is not required to respond.  The extent a response is required, Defendant is without sufficient personal knowledge to admit or deny Plaintiffs' allegations contained in paragraph 6 of the Complaint.

7.     The Defendant OWENS-ILLINOIS, INC, (hereafter "O-I") is a for-profit business organization.  Its principal office and place of business is located in Toledo, Ohio.

Response:     Defendant admits the allegations contained in paragraph 7 of the Complaint.

8.     On or about December 14, 2002, O-I entered into a collective bargaining agreement with Local Lodge No. 2671 of District Lodge No. 65 of the International Association of Machinists and Aerospace Workers (hereafter referred to as "the Union").  Among other things, that collective bargaining agreement obligated O-I to commence making regular contributions to the Plan on behalf of those of its employees in the bargaining unit represented by the Union, and to continue those contributions during the term of the agreement and its subsequent renewal thereof.

Response:     With respect to the allegations contained in paragraph 8 of the Complaint, Defendant admits that it entered into a collective bargaining agreement with the Union on or about December 14, 2002, which speaks for itself.  Defendant denies the remaining allegations contained in paragraph 8 of the Complaint.

9.      By letter dated January 3, 2003, O-I was advised that before acceptance as a Contributing Employer, it must provide certain information and submit a signed Collective Bargaining Agreement, incorporating the Plan's Standard Contract Language either in the body of the agreement or signed as an addendum.

Response:   With respect to the allegations contained in paragraph 9 of the Complaint, Defendant admits that it received a letter dated January 3, 2003, which speaks for itself. Defendant denies the remaining allegations contained in paragraph 9.

10.     Between January 3, 2003, and the beginning of May 2003, communications continued among O-I, the Union and the Plan.

Response:   With respect to the allegations contained in paragraph 10 of the Complaint, Defendant admits that it had communications with the Union and the Plan including, but not limited to, the time between January 3, 2003 and the beginning of May 2003.

11.     On April 30, 2003, the Defendant executed a document entitled I.A.M. National Pension Fund, National Pension Plan STANDARD CONTRACT LANGUAGE and sent a copy of the executed document to the Plan by facsimile.

Response:   Defendant admits the allegations contained in paragraph 11 of the Complaint.

12.     A facsimile copy of the document described in paragraph 11, was sent to the Union, executed by the Union on May 2, 2003, and a facsimile copy, with the signatures of both O-I and the Union, was returned to the Plan on May 5, 2003.

Response:   Defendant is without sufficient personal knowledge to admit or deny Plaintiffs' assertions contained in paragraph 12 of the Complaint.

13.     Having "received the necessary documents from the parties," the Plan sent a Notice of Acceptance, dated May 9, 2003.

<u>Response</u>:     With respect to the allegations contained in paragraph 13 of the Complaint, Defendant admits that it received from the Plan a letter dated May 9, 2003, which speaks for itself.  Defendant denies the remaining allegations contained in paragraph 13.

14.     The document, signed by O-I on April 30, 2003 and sent to the Plan by O-I on that date, has paragraphs labeled A through F.  After paragraph F. is the phrase "end of Standard Contract Language."  There is a second page of "options", ending with space for signatures of the Union and the Employer.

<u>Response</u>:     With respect to the allegations contained in paragraph 14 of the Complaint, Defendant admits that it signed a document on April 30, 2003, which speaks for itself.

15.     The document signed by O-I on April 30, 2003, and sent to the Plan by O-I on that date, indicates, among other things;

    a)     it is Article 19 of the Collective Bargaining Agreement between the Union and O-I

    b)     O-I shall contribute to the Plan certain specified amounts for each hour for which O-I's employees in covered job classifications are entitled to receive pay

    c)     it contains the entire agreement between the parties regarding pensions

    d)     any contrary provisions of the collective bargaining agreement shall be void and

  e)  no oral or written modification of this agreement shall be binding upon the Trustees of the Plan.

 Response: With respect to the allegations contained in paragraph 15 of the Complaint, Defendant admits that it signed a document on April 30, 2003, which speaks for itself. Defendant denies all remaining allegations in paragraph 15 of the Complaint.

 16. Notwithstanding the obligations it undertook when it signed the Standard Contract Language and the representations it made to the Plan when it presented that document as Article 19 of its collective bargaining agreement, O-I has refused to abide by the terms of that agreement.

 Response: Defendant denies the allegations contained in paragraph 16 of the Complaint.

 17. An independent auditor hired by the Plan has determined that between January, 2003 and May 31, 2005, O-I under contributed $102,414.70. The audit was conducted in July, 2005.

 Response: On information and belief, Defendant admits that the auditor hired by the Plan was an independent auditor. With respect to the remaining allegations contained in paragraph 17 of the Complaint, Defendant admits only that an audit was conducted in July 2005. The documents memorializing that audit speak for themselves.

 18. O-I has requested and was granted a credit of $46.07. Therefore, as of the date of this action, O-I owes the Plan $102,414.70 in underpayment minus $46.07, or $102,368.63, plus Interest and Liquidated Damages, as provided by the Plan document and statute.

 Response: Defendant denies the allegations contained in paragraph 18 of the Complaint.

19. Article V, Section 4 of the Plan Trust Agreement dated May 1, 1960, as amended, by which Defendant has agreed to be bound, provides in pertinent part as follows:

> When an Employer has failed to pay the amounts due to the Pension Fund when such amounts become due and payable, that Employer shall be considered delinquent. If the Employer fails to make contributions within thirty (30) days after the date of the delinquency, the Employer shall be liable for liquidated damages of 20% of the amount due and simple interest shall be paid on all amounts due at the rate of 18% per annum from the date of the delinquency until the date payment is received. The Trustees may from time to time change the applicable percentages for liquidated damages and interest, but on a uniform basis for all Employers.
>
> The Trustees shall have the power to take any action necessary to enforce the payment of contributions, liquidated damages, interest, and other amounts due, including, but not limited to, the institution of or intervention in any legal, equitable, or administrative proceedings, and all reasonable expenses incurred by the Fund in enforcing the payment of contributions, liquidated damages, interest, and other amounts due, including, but not limited to reasonable attorneys' fees, accountants' fees and court costs shall be added to the obligation of the defaulting Employer in addition to the amount due. The Employer agrees that such sums, together with liquidated damages and interest as set forth above, shall be included in any judgment issued by a court. The Trustees shall have the authority to settle or compromise any claims, suits, or legal actions for less than the full amount due when in their discretion, they deem it in the best interest of the Fund.

<u>Response</u>: With respect to the allegations contained in paragraph 19 of the Complaint, Defendant admits that it signed a document entitled I.A.M. National Pension Fund, National Pension Plan STANDARD CONTRACT LANGUAGE, which speaks for itself. Defendant is also aware of the existence of a document entitled Plan Trust Agreement dated May 1, 1960, as amended, which speaks for itself. Defendant denies the remaining allegations contained in paragraph 19 of the Complaint.

20. 29 U.S.C. §1145, provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collective bargaining agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or agreement.

    <u>Response</u>:     To the extent paragraph 20 of the Complaint constitute legal conclusions, Defendant is not required to respond.  To the extent a response is required, Defendant admits that paragraph 20 of the Complaint accurately quotes 29 U.S.C. § 1145.

    21.     29 U.S.C. §1132(g)(2), provides:

> (2)  In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan –
> 
> (A)     the unpaid contributions,
> (B)     interest on the unpaid contributions,
> (C)     an amount equal to the greater of –
>     (i)     interest on the unpaid contributions, or
>     (ii)    liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D)     reasonable attorney's fees and cost of the action, to be paid by the Defendant, and
> (E)     such other legal or equitable relief as the court deems appropriate.

For the purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

    <u>Response</u>:     To the extent paragraph 21 of the Complaint constitute legal conclusions, Defendant is not required to respond.  To the extent a response is required, Defendant admits that paragraph 21 of the Complaint accurately quotes 29 U.S.C. § 1132(g)(2).

## **DEFENSES AND AFFIRMATIVE DEFENSES**

    22.     The Complaint fails to state a claim upon which relief can be granted.

    23.     Plaintiffs' claim, in whole or in part, is barred by equitable estoppel.

    24.     Plaintiffs' claim, in whole or in part, is barred by laches.

    25.     Plaintiffs' claim, in whole or in part, is barred by fraud in execution.  For this affirmative defense, Owens-Illinois alleges as follows:

    a.    On January 14, 2003 Owens-Illinois signed a document entitled "I.A.M. National Pension Fund, National Pension Plan STANDARD CONTRACT LANGUAGE."

    b.    On February 13, 2003 the Plan, as defined in the Complaint, delivered to Owens-Illinois "a corrected copy of the Standard Contract Language" via facsimile. The coversheet of the facsimile stated, among other things, "The Standard Contract Language says must round up for each portion of hour. We need something in writing if this is not the parties [sic] intent."

    c.    Owens-Illinois justifiably relied on this and other statements in the February 13, 2003 facsimile cover when, on or around March 18, 2003, Owens-Illinois sent the Plan a document signed by both Owens-Illinois and the Union that stated "[p]lease be advised that it is the intent of Owens-Illinois, Inc. Glass Containers and the Local Lodge No. 2671, I.A.M. to make contributions to the I.A.M. National Pension Fund based on actual hours worked." This March 2003 document is consistent with the December 2002 collective bargaining agreement and the January 2003 Standard Contract Language.

    d.    Owens-Illinois properly and justifiably believed that the March 2003 document satisfied the Plan's request for a writing setting forth the parties' intent and was binding on all parties.

    e.    Owens-Illinois justifiably relied on the Plan's statements in the February 13, 2003 facsimile when it signed the "corrected" 2003 Standard Contract Language sent to Owens-Illinois in February 2003.

      f.      The Plan's statements in the February 13, 2003 facsimile constitute intentional, material misrepresentations.

      g.      The Plan intended Owens-Illinois to rely upon the material misrepresentations in the February 13, 2003 facsimile.

      h.      Owens-Illinois in fact justifiably relied upon the material misrepresentations in the February 13, 2003 facsimile.

      i.      Owens-Illinois learned in 2005 in communications with the Union and the Plan that the Plan's actual position was (and is) that the March 2003 document has no legal effect.

26. To the extent any money is due, which Defendant denies, Defendant is entitled to relief for overpayment of contributions made to the Plan as set forth in more detail in the Counterclaims.

27. To the extent that additional defenses or affirmative defenses are discovered during the course of the litigation, Defendants reserve the right to timely plead the additional affirmative defenses.

**COUNTERCLAIM**
**FACTS**

For its Counterclaim in this matter, Defendant Owens-Illinois alleges as follows:

28. On or about December 14, 2002, Owens-Illinois entered into a collective bargaining agreement ("CBA") with Local Lodge No. 2671 of District Lodge No. 65 of the International Association of Machinists and Aerospace Workers ("the Union"). The terms of the CBA control Owens-Illinois' rate of contributions to the Plan.

29. At all times, Owens-Illinois has made contributions to the Plan as promised by the terms of the CBA.

30.     On November 16, 2005, Owens-Illinois sent a letter to the Plan requesting a credit in the amount of $16,303.95.  In that letter, Owens-Illinois stated "[t]he first week of September 2003 was errantly sent with the August 2003 contribution file then again with the September 2003 contribution file.  This resulted in an over payment of $ 10, 621.71.  The next issue involves contributions being made on behalf of part-time summer help.  In 2003 Owens-Illinois contributed $4,847.37 to the IAM summer help.  Owens-Illinois contributed $834.87 to the IAM in 2004 for summer help."

31.      On May 31, 2006, Plaintiffs sent Owens-Illinois a letter answering its request for a refund for overpayment of contributions made to the Plan.  Plaintiffs denied Owens-Illinois' claim.

## COUNTERCLAIM
### (Breach of Contract/Unjust Enrichment)

32.     Owens-Illinois repeats and realleges the allegations contained in paragraphs 28 through 31 as though fully set forth herein.

33.     In the years 2003-2004, Owens-Illinois inadvertently paid more than its required contributions to the Plan by the amount of $16,303.95.

34.     This inadvertent overpayment by Owens-Illinois conferred a monetary benefit upon the Plan and resulted in the Plan receiving more monies from Owens-Illinois than it was contractually obligated to pay under the CBA.

35.     Plaintiffs have unjustly refused to refund Owens-Illinois the amount of Owens-Illinois' overpayment, in violation of the CBA.

36.     Accordingly, Owens-Illinois is entitled to a credit in the amount of $16,257.88 for overpayment of contributions made to the Plan. (This amount reflects the credit of $46.07 that the Plan has already granted to Owens-Illinois.)

WHEREFORE, Defendant Owens-Illinois, Inc. prays that:

(a) the Court render judgment in Defendant's favor and that Plaintiffs take nothing by reason of their Complaint;

(b) judgment be rendered in Defendant's favor on its counterclaim;

(c) Defendant be awarded attorneys' fees and costs; and

(d) Defendant be afforded such other and further relief as the Court deems just and equitable.

Dated:      August 25, 2006
            Washington, D.C.

Respectfully submitted,

_/s/ Michele Levy Berlove_
Philip H. Hecht (DC Bar No. 333286)
David Pickle (DC Bar No. 440629)
Michele Levy Berlove (DC Bar No. 468883)
KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
1601 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 778-9000
Facsimile: (202) 778-9100
E-mail: phecht@klng.com
         dpickle@klng.com
         mberlove@klng.com

Counsel for Defendant Owens-Illinois, Inc.

## **CERTIFICATE OF SERVICE**

I certify that on August 25, 2006, a copy of the foregoing Answer, Affirmative Defenses and Counterclaim was filed via the electronic case filing system of the United States District Court for the District of Columbia and, accordingly, that the Court will send notice of this filing electronically to:

>Joseph P. Martocci, Jr.
>Robert T. Osgood
>1300 Connecticut Avenue, NW
>Suite 300
>Washington, D.C. 20036
>**jmartocci@iamnpf.org**
>**rosgood@iamnpf.org**


        /s/ Michele Levy Berlove
    Michele Levy Berlove